The next case is United States v. Horton. This is down. It's only taken 30 years for me to learn this. I'm so proud. I finally did it right. Yay! You can move the microphone. Yeah. Thank you. My name is Donna Newman. I'm here on behalf of Ronald Horton, who comes before this court to claim error, in which we claim error in certain conditions of supervised release. I'd like to address first what was labeled standard condition of supervised release, which is condition 14. And that's the condition in the judgment that requires Mr. Horton to disclose to probation his finances. What the problem with this condition is, Your Honor, is that this condition, in the guidelines at least in 5D1.3D3, is for where there is restitution, forfeiture, victims where they have an order for restitution, pay a fine. But indeed in this case, there was no restitution. The only forfeiture was an iPhone that had been seized and already given to the government. There was no fine. And indeed, the record is that the court found that Mr. Horton not only had a CJA counsel, but in addition, he had no ability to pay a fine or the special assessment. So this condition has no meaning. It has no relationship, obviously, to the crime, which was not a financial crime. He had committed a sex offender crime. And it certainly infringes on his liberty and his privacy for no reason related to the crime. It was part of a standard condition that the Northern District had incorporated into all sentences, right? That is correct. Can I just ask, just understanding what notice your client might have had about that. I mean, the court here said that, as sentencing, that Mr. Horton would have to comply with the standard conditions that had been adopted by this court. These were part of standard conditions that seemed to go back for years and years. Wouldn't a CJA attorney in the Northern District know that standard conditions 14 and 15 are imposed in all cases? Well, I think that's the government's argument, and I disagree with that, because it's not whether or not the attorney knows, but whether the record indicates in any way that the client knew. And so I would assume, yes, the CJA attorney did know. But the point of the matter is, when asked about, with respect to even the PSR, the counsel said, I just shared it with my client. But it wasn't as far as that standard condition. It wasn't in the PSR. And it is interesting to note, more than just interesting, that that condition, standard condition 14, no longer appears in general order number 23, and that it was amended, I believe in December of 2023, to eliminate that condition, which is interesting in and of itself, because then it would be error, because it's not. It has no relation as a special condition, which I indicated is applicable to financial crimes. But not in standard condition. So since it's in error now, it would be considered an error of which it should be. That condition should be taken out of the judgment. Are there any questions about that? I'll move on to another condition that we challenge. Okay. And we should also say, just to be clear, that was the only reference in the record as to the so-called conditions of the court. It wasn't clear whether it was her court, or as to her, or these general conditions that we know of now. So I would like to move on then to the special conditions of supervised release, which I also claim are error, which are number 9, 10, and 11. And why I claim that is an error. Now, those are special conditions we know even in this district. They have to be pronounced orally. They were. They were in the PSR. So notice was given. But they weren't explained completely, but the court does mention that she is imposing this. But this is my concern here. One, the record doesn't support these conditions. Why? He does have a history of substance abuse, but that is not sufficient, because the guideline says that specifically 5D1.3D, special conditions for substance abuse, if the court has reason to believe that the defendant is an abuser of narcotics or other controlled substances or alcohol, and I'm pointing that out because what's the record? The record is that prior to even his arrest, two years prior to his arrest, he had himself stopped using alcohol, and that he hadn't used marijuana or any illegal substance during the three years pre-trial. Why did the court have to believe that? They had no reason. It wasn't disputed. But I guess if there is a record, a history of substance abuse, why does the court have to decide, which I think is what your argument depends on, that if the defendant claims that currently he's not abusing, then a district court lacks discretion, because it is an abusive discretion standard, right? Lacks discretion to say, you know what? I need to ensure your rehabilitation. I'm going to make sure that you get proper treatment. Twenty years later, that's my other part of the argument. When we're talking about where the court adopts the PSR and the PSR says that the defendant hasn't used alcohol, so a main part of my argument is about that alcohol, that he has to undergo alcohol treatment and reframe from use of alcohol. So he will have done that for 20 years, right, in prison, and then has 15 years of supervised release that he, in condition 10, must abstain from alcohol and the general condition of substance abuse. So I say the more logical and reasonable way- Can I just back up then a second? Your point is 20 years. You're saying he's going to do 20 years in prison? And therefore, presumably because it's hard to get alcohol and drugs in a federal prison, it makes no sense to order treatment afterwards? Is that why you're mentioning the 20 years? There is a way. What is important to recognize is that you're using government probation's resources. When he is released after that period, which we assume, and it's negative comment on the prison system to say, after he gets out, maybe he's still a user 20 years later, he is tested. Supervised conditions can always be changed. Well, I guess that's sort of where I was going with this. 20 years later, maybe you're right. Maybe he won't have a problem. But if the court thinks it's currently a problem, that this is the state of play with this fellow, that he has these problems, why is it an abuse of discretion to say, look, when he gets out, I want to surround him with safeguards? Like a treatment. This is not a punitive thing. This is a treatment thing. And then to say, look, and after a year or something, he comes to me and he's clean and he can have a lawyer come and tell me how well he's been performing, then, you know, the district court, as all district courts do, can change the conditions and say, well, look, I think you don't need this treatment. Why is it that the district court has to start by maybe, in its view, allowing him to fail and then needing to intervene, as opposed to starting by surrounding him with treatment options? Because, Your Honor, the reality is when he gets out after that, what you're saying to this defendant, those treatments that you've gone through, assumably in the while you're incarcerated, which is currently greatly encouraged in our prison system, those are going to be useless. And we're going to test you. Isn't your argument valid for anyone for whom a long sentence of incarceration is imposed? That's what I don't understand. The longer the sentence, the less likely they can be ordered to engage in treatment when they get out. It's the ordering of treatment. I am not saying they may or may not need treatment. I am saying that we determine that because as soon as they get out, they are tested. Not once. They could be tested twice or three times. But if at that point they have the option, otherwise what you're mandating, is this individual who has been in the prison system, and we have to assume, unless we see on the first testing otherwise, that he's not using. And then putting him through a year of unnecessary treatment, which will interfere with his ability to get work in the sense of scheduling, and his other activities, where we want him to integrate into society. So it is better where there is evidence in the record that he is not currently using, and the court adopts that statement in the PSR, to then not give it, particularly the alcohol, not mandate alcohol treatment, and then we can later decide. That is why I think it's an abuse of discretion. But I have over my time. Thank you. Good morning again, Your Honors. Thomas Sucliffe on behalf of the United States. I'll begin, if I may, with the standard conditions 14 and 15. First, as a threshold matter, the plain error of abuse standards should apply here. As the court noted previously, the district court at sentencing told the defendant that he would have to, quote, comply with the standard conditions that have been adopted by this court. That was an explicit reference to general order number 23, which at that time incorporated both standard conditions 14 and 15. The defendant was represented by counsel, was a member of the CJA panel, and thus was presumably aware of the standing orders that had been adopted in the Northern District of New York, and yet she did not make an objection. The defendant also did not file to move or amend the judgment after it issued on the docket, which, of course, included these standard conditions. That's not something we usually require, right? I mean, for plain error, if something happens at a sentence and you object, if you don't like it, so I understand your point. If your point is, look, it was said out loud at sentencing in a way that anyone would have understood it and could have objected to that, I guess I'm not sure that the whole business of filing to amend the judgment. Your Honor, there have been some cases where this court suggested if the error is something that appears for the first time in the judgment, that the failure of the fault. That's like a clerical error or a scrivener's error or something, right? Your Honor, I'm thinking in particular, and I apologize, I don't think I'll pronounce this case correctly, but the Verkuglad decision that we cite in our brief, that was a situation where the claim of error was that the district court had not codified in writing its justification for an above-guideline sentence. This court did note, albeit in a footnote, that plain error review should apply because there was no Rule 35 to correct that type of error. But that's the kind of error that only turns up in the judgment, right? Well, yes, but I think in some ways you didn't write it in the judgment, so no one would have known whether the judgment would be a defective written document until the written document came out, right? But I think that's comparable to the situation here because the challenge as to something that was included in the final document that he's claiming wasn't orally pronounced. But in any case, Your Honor, I agree. We can put that aside. Can I ask you as a very practical matter? There are a lot of these cases bubbling through our court on the northern district standard conditions, and I think some of them were argued ahead of us, right? They were, yes. There have been two arguments in cases where this was raised, but this particular issue was only addressed in one, and that was last December. Well, just let's say assuming that there's a possibility that this panel might have to wait and see what other panels say first about it. What is going on as a practical matter with these conditions in northern district? I understand they've amended the general order, right, of standard conditions for the district? That's correct, in December of 2023, yes. Are there any cases where the government is, for whatever reason, I don't know how this may or may not happen, where cases are somehow going back for any other reason to the district court and they're simply amending to take those two conditions out or the judges may be giving more individualized consideration? Just what's the state of play with appeals in the northern district on this issue? So right now, Your Honor is correct. These standard conditions are no longer standard conditions for all cases going forward. So right now, if they're being imposed at all, it's being done as special conditions, and they're being proposed in addendum to PSRs. They're being treated as any other special condition. In terms of cases going back on appeal, I can't speak categorically. I can think of at least one case that I'm personally involved with where it did go back, was originally a standard condition, and now consistent with the new practice is being applied as a special condition. So I think the short answer is they're effectively all special conditions at this point. And this is in no way intended to put you on the spot or suggest that your office should do anything in particular, but is there any possibility that your office would, for example, on this issue, agree to a remand as to those two particular issues, and then in that case, if the parties were to agree, then this panel would be free to rule on the other issues and not have to wait for the other issues that may be before other panels? I only float that. I don't know. Your Honor, I'm not authorized to agree to a remand on that basis. It still is our position that this is not plain error, so we are defending it as applied. But that said, certainly on the alternative, if the court disagrees with that, we would contend that remand would be appropriate here because these can be imposed as special conditions. I would just note also that the fact that the Northern District chose to remove these from standard conditions is not necessarily a concession of error. That was prompted by this court starting to issue orders to brief these issues in response to Andrew's motions. So what it really reflects more is just a recognition that litigation and uncertainty could be avoided by taking the special condition route. One more question on that, if my colleagues will indulge me. As to the current practice, you're informed about how things are working in the Northern District now. Do you know whether at sentencing, is the court doing anything differently from how this case happened, where it references the standing order or the standard conditions that were adopted by the court? Or is it, for example, ensuring that a copy is present in the courtroom or is it inquiring as to whether counsel or the defendant has a copy or has read them? Do you know? Is Your Honor referring specifically to the standard conditions in General Order 23? Yeah, the standard conditions, yeah. Your Honor, I'm not exactly sure. I think that I'm not aware of any instance, I can say, where the general order is being presented to defendants at the time of sentencing. I'm not positive that there hasn't been, I can't say categorically that there's been no instance where that's occurred. But as far as I'm aware, the district court has not... Might I suggest that future appeals could be avoided? I will certainly... If such a practice were followed. I will certainly take note of that, Your Honor. I would note that most of the remaining standard conditions, most if not all, do conform more closely to the standard conditions in the guidelines. So I think there's less controversy there as far as the Sunshine Pimental issue goes. But Your Honor's point is duly noted. So the standard of review should be plain error here. And there was no plain error for two separate reasons. First, both standard conditions 14 and 15 are largely identical to conditions that the guidelines do recommend in 5D1.3D. And therefore, under this court's holding in the Sunshine Pimental, no oral pronouncement was needed, let alone any type of explanation. So, for example, under 5D1.3D.3, the guidelines recommend that where there is a forfeiture order, as there was here, that it is appropriate to apply a financial disclosure condition. Now, admittedly, the forfeiture order here was more discreet than is sometimes the case, given that it applied to a phone and to only a phone. But that said, the guideline does not purport to make any exception to what types of forfeiture trigger that condition. So certainly under plain error review, we would submit there was no clear or obvious error. And the guidelines also recommend in 5D1.3D.7 that when a defendant is convicted of a sex offense, which the defendant here was, that it's appropriate to impose a search condition. And I would further note that the condition that the guidelines recommend is actually more intrusive than what's recommended in standard condition 15, because it does allow for suspicionless searches, which is a point that this court made in the Parisi decision. So it's actually less stringent than what the guidelines recommend, and as accordingly under Sunshine Pimental, the court was not required to orally pronounce it. Let me just ask about the plain error standard. Let's assume that we were to say that the fact that there was a reference to this standard conditions at sentencing was not to alert someone to make an objection if they wanted to, as you argue. Isn't that a circumstance in which we've applied, tended to apply relaxed plain error in the past in any event? I don't think it would be, Your Honor, because relaxed plain error, and the government disputes its validity as a doctrine generally, but in any case, relaxed plain error doesn't apply when the defendant has notice of the conditions. Here he has notice, because there's the standard order that says exactly what they're going to be. Now, this court has said before that simply attaching it to the PSR is sufficient to give notice. I would submit that this is superior to that, because proposed conditions of the PSR may or may not be adopted. When you have general order 23 saying these are the standard conditions, they will be adopted, the defendant goes in and defense counsel goes in knowing that these are going to be conditions. So he's fully on notice such that we would contend relaxed plain error does not apply. So relaxed plain error can apply. I think we may have cases where an objection is, where there's no objection, but the defendant first learns of the possibility of this happening at the sentencing itself. And here your argument is that these were standard conditions. They happen to also have been mentioned at the sentencing, but he probably also, I mean, a defendant, let's talk theoretically here for a moment, would have had notice going into the sentencing that it's probably the standard conditions are going to be imposed, even if it wasn't in the PSR. That would be our position, Your Honor, yes. And granted, the defendant personally himself may not be familiar with the general order, but certainly his counsel would be expected to be. And I'm not aware of any case law in the plain error context that says that the issue has to be clear enough that the defendant personally is on notice. After all, that's why defendants have counsel, is to be more aware of particular legal nuances that their clients may not be. Your Honor, there is a separate argument. I see that I'm out of time for upholding these standard conditions. May I address that? Yes, briefly. So putting aside the guidelines issue and the assumption to mental argument, there was no plain error here for a second reason, which is that the Northern District of New York did not commit a plain or obvious error by concluding that these standard conditions were basic administrative requirements that were a foreseeable part of supervised release, and as a result of that were just an inherent part of what it meant to be supervised release, under the logic of this Court's holding in United States v. Thomas. They don't pose a significant new burden on any of the defendants. For example, they don't purport to limit the defendant or prohibit any kind of non-criminal conduct. They do represent privacy intrusions, but those privacy intrusions are not materially greater than the type of intrusions that are inherent in any type of supervised release. As this Court has said before, a federal supervisee, in terms of expectation of privacy, is functionally no different than a parolee. And as the Supreme Court has said, such as in the Samson v. California decision, parolees have a severely reduced expectation of privacy, merely by virtue of their status alone. And this Court also said in the relatively recent Bragg's decision that probation officers are allowed to conduct even suspicionless searches under the special needs doctrine, which of course is a greater level of intrusion than is inherent in this condition here. So for those reasons as well, even if none of these conditions were recommended under the guidelines, we would submit that there still was no plain error for that reason. Can I just jump in with one other question? And I'm sorry, this is a factual detail that may be in the record. How are the general conditions adopted by the Northern District of New York publicized? Are they appended to the local rules? Are they on the court website? Do you know how they are disseminated? Your Honor, my understanding is they're at least available on the court website, yes. Now, if you were to go to the website now, it would not show the old version. It would show the current version. But my understanding is they are available. But not appended to the local rules, for example. Do you know? I don't know the answer to that one, Your Honor. That's fair enough. Okay, thank you. Thank you. I'd like to address very briefly what is important here, and it comes up very often, the application of either the relaxed or the standard plain error. And it does have to do, in part, as we know from the case law, with notice. Notice is important because it gives the opportunity to object. So I just want to diverge a little bit just by, you know, feet on the boots, because I'm in the district court. And I can tell you now, recently, that the district court is reading at sentencing the standard. All the standard rules that apply. And in one, I did object. I cannot recall the case, but I remember that, in fact, the courts did that and thought about it and agreed that in this particular case, for this particular unique set of facts, maybe that didn't really work. And so it is important. And here's to simply say because a counsel knew that that imputes knowledge to the defendant when it wasn't part of the PSR, and it wasn't even said at the plea, and you will be required at sentencing to abide by our standard rules. So there's no notice. There's no understanding of the court. And that's just not notice. And I do think the relaxed standard still applies. Hang on a second. I'm not sure I follow. Most things that could go wrong in court, no litigant would have any idea that something's going wrong. Only the lawyer would understand. For example, at a trial, you know, knowing that Rule 403 of the Rules of Evidence is, you know, not being applied correctly, or I don't know. I can think of a million things that happen in court. We don't ask would the litigant have understood because the litigant is represented by counsel. That's why. They're represented by counsel. So if, in fact, and this is something that I don't think that you're necessarily conceding, but if the lawyer knew about the Northern District's general order and heard the court say we're going to impose it, we would hold the litigant, in this case the defendant, to counsel's failure to object, right? I think that this is, in reality, not what happens. Different in trial. We're talking about a sentencing in which the defendant has to be on notice of what the sentence is. Well, let me give you an example. Sentencing, take sentencing. The court does not articulate a basis for a dramatic upward variance from the guidelines. There's no objection. We're not going to say, well, you know, the litigant needed to know that that was something to object to or not. We'd say, no, no, the lawyer had to object to it. The court didn't have to notify the litigant and say, oh, by the way, because I'm giving a dramatic upward variance, the Second Circuit has said that I need to explain why, right? I mean, everything that happens in sentencing, as long as you've got a lawyer, it's the lawyer's job to object. But even that the law is, even with special conditions in which these now fall under, the court is obligated to say what those special conditions are. No, I get that. I get that. You're saying that the court made a mistake and that the defense lawyer was not in a position to object or something like that. I get that. But what I'm saying is a distinction. You seem to be saying that the litigant also, the defendant has to be. And I'm saying I don't understand that argument. No, I'm sorry. It is clear that the defense counsel did not object. But my argument, not that he had to object, it just said the defendant had to be on notice. Certainly the defense counsel should have objected, but that has a lot to do with opportunity to object. When you first hear it in court, it's often very difficult. Going back to trial, how many trial transcripts I've read? How many trials have I been involved? Well, I should have objected. It's very difficult on the moment. But this is his supervised release. This is what he's going to have to live with for 15 years. So the opportunity to object to the finances, which makes no sense on the record. It's a special condition. And they blur the lines, which now they seem to clear up, between special conditions and standard conditions. And standard they previously made mandatory, but they're not mandatory. The statute's clear on what's mandatory. And, yes, there's administrative. And I suggest to you, and I've suggested in my brief, that there are six other circuits that say, standard conditions must be read out loud at sentencing, just so the clients are noticed. And I'm saying that they now, at least the courts I've been in, have now done that to eliminate this problem. And it's easy. And it's the same thing with the PSR. Did you give the PSR to your client? Did you review it? Those are standard questions. That was not said here. That's what I'm talking about. Thank you very much. Thank you both. And we will take the matter under advisement.